Everett, J.
This cause came on to be heard April 10, 1934, upon the pleadings, agreed stipulations of fact, and the evidence and was submitted to the court, jury trial having been waived.
It is alleged in the petition for a first cause of action that there is due the plaintiff upon a promissory note an unpaid balance in the sum of $4928.95, with interest at 7 per cent from October 31, 1933; that more than two monthly payments to be made under the terms of said note are now unpaid and past due, whereby the remaining unpaid balance of said note has become wholly due and payable; and that after execution of said note by Earl Mefford and Fern Mefford the defendants, Russell I. Watkins and Stella P. Watkins, and A. D. Swinehart, in writing, assumed and agreed to pay said note'; the plaintiff for a second 'cause of action sets forth the execution, filing for record, and the usual allegations, pleading a mortgage upon certain real estate given as security for the note sued upon in its first cause of action and asks for judgment, appointment of receiver to collect rents and profits, foreclosure of mortgage, and sale of premises.
The defendants, Earl Mefford and Fern Mefford, filed their answer claiming that as between them and the plaintiff, A. D. Swinehart, Russell I. Watkins and Stella P. Watkins are now the principal debtors; the defendants, Russell I. Watkins and Stella P. Watkins filed answers claiming that A. D. Swinehart, as between them and the plaintiff, is the principal debtor; the defendant, A. D. Swinehart filed an amended answer and cross petition admitting the corporate capacity of plaintiff, the execution and delivery of the note and mortgage alleged in the petition and further admitting that on October 7, 1933 the premises described in the petition were for a valuable consideration transferred to him and that he assumed and agreed to pay the note described in the petition and is the principal and primary debtor on said obligation, and then, by way of cross-petition sets up a counter claim claiming that there is due him from the plaintiff the sum of $4954.11, *411 with interest from December 2, 1933, on certificates of deposit owned and payable to him from and by the plaintiff and sets forth copies of the same. He further alleges that he tendered the plaintiff said certificates in full payment of plaintiff’s claim and still stands ready, able and willing to cancel the same upon the satisfaction of the obligation claimed by plaintiff against defendant and set forth in his petition herein, and further alleges he is not advised of the solvency or insolvency of plaintiff, but avers that plaintiff is unable to meet its obligation in the usual course of business and that plaintiff has voluntarily set off deposits against obligations owing to it by plaintiff’s depositors, and asks that his claim be allowed as an equitable set off and for all proper relief.
The plaintiff filed a reply to the amended answer and cross-petition of the defendant, admitting that it was a building and loan association doing business under and by virtue of the laws of Ohio; that the defendant, A. D. Swine-hart is the owner and holder' of the certificates of deposit as set forth in the said answer and cross-petition and that on October 28, 1933, said defendant requested it to allow a set-off of said certificates against the indebtedness set forth in the plaintiff’s petition and that the plaintiff refused to permit such set-off and then pleads the by-laws and rules of plaintiff association in further defense and asks for the'relief prayed for in its petition and that the relief in defendants’ amended answer and cross-petition be denied.
It will be noted that the salient facts in both the petition and answer and cross petition are admitted by the pleadings of the parties. The court further finds from the pleadings and the evidence that there is due the plaintiff from the defendants, A. D. Swinehart, Russell I. Watkins and Stella P. Watkins, Earl Mefford and Fern Mefford, the sum of §4928,95; that the defendant, A. D. Swinehart on October 28, 1933, was the owner of certificates of deposit in the Union Savings and Loan Company, in the sum of §4954.11, with interest computed to December 2, 1933; that on October 28, 1933, the defendant, A. D. Swine- *412 hart tendered to plaintiff the surrender and cancellation of such certificates of deposit in full payment of plaintiff’s indebtedness and requested cancellation of defendants’ mortgage and note secured thereby and that the plaintiff refused to accept such certificates of deposit in payment of its note and mortgage and refused to cancel said mortgage. The court further finds that the total sum of said certificates of deposits and interest on the 28th day of October, 1933, was in excess of the amount due upon plaintiff’s note, or in excess of the sum of $4928.95; that at the time plaintiff’s petition was filed herein on November 3, 1933, the defendant, A. D. Swinehart had not made payments upon said note as provided therein and that there was due plaintiff more than two of the monthly payments to be made under the terms of said note; and that the conditions of said note and mortgage had been broken as to the failure to make any money payments by said A. D-. Swine-hart, and that he had made tender of payment in full by deposit certificates on October 28, 1933.
It is claimed by the plaintiff, both by argument of counsel and brief, that it is entitled to recover the full amount of its note and have its mortgage foreclosed and the premises sold in satisfaction thereof; that, under the law of Ohio, the rules, regulations and by-laws of the building and loan association, .defendant cannot withdraw his certificates of deposit except as provided by contract; that defendant’s certificates of deposit are not due and cannot be set off against plaintiff’s claim and that to allow such set off would be in violation of its contract and the law. It is claimed that all payments of certificates of deposit are governed by Section 22 of the by-laws of the association, which is as follows:
“Section 22. Members and special depositors whose stock or deposits are not pledged to this company may as a general rule, upon written application to the Secretary, withdraw all or any part of their stock, credits or deposits at any time without previous notice, but to protect the inerests of depositors and borrowers and avoid sacrifice of securities notices of withdrawal may at any time be required and the liability to pay further dues, and the right *413 to dividend on stock credits and interests in special deposits shall cease with any application to withdraw. All persons withdrawing shall be entitled to receive the amount of all credits at the time of the application to withdraw, less any member’s share of the company’s loss in excess of the contingent fund. The required notices to withdraw shall be filed in the order in which they are received and paid from the regular receipts of the company in the order in which they are filed as fast as 50 per cent of the regular receipts of the company will pay them; but the Board of Directors may, at its discretion, use all the regular receipts of the company to pay the withdrawals. All withdrawals shall be taken from the oldest deposits and no withdrawals from any one account or certificate shall exceed one thous- and dollars in each thirty days ahead of other pending applications for withdrawals not exceeding $25.00 at one time, nor exceeding $100.00 within thirty days regardless of the order of application.”
. It is further claimed that the defendant, • A. D. Swine-hart, purchased his certificates of deposit after the execution of said mortgage and note for less than their face value, which claim is admitted and that a certain contract was entered into between A. D. Swinehart and Russell I. Watkins and Stella P. Watkins, dated October 7, 1933, whereby said defendant Swinehart agreed to resell the premises described in the petition if he were successful in securing his set-off, which contract is admitted by the defendant and is as set forth in Exhibit X in this cause, and that by reason of all these facts defendant Swinehart, is not entitled to the set-off claimed.
It is contended by counsel for the defendant, Swinehart, that under the facts and the law, he is entitled to the set-off claimed and that the court should allow the same and order the note and mortgage of plaintiff cancelled and released and delivered to the defendant and the certificates of deposit of the defendant delivered to the plaintiff. Counsel for defendant claims that such demand of off-set is not a withdrawal within the provisions of the contract and law and that the relationship between the plaintiff and this defendant are those of debtor and creditor. Counsel for defendant also claims that the plaintiff reduced the *414 interest payable upon said certificates in violation of its contract.
The court now comes to the consideration of the claims of the parties as to the law and evidence in this case. The court has examined the authorities cited by counsel for both plaintiff and defendant. The court finds that the authorities are divided upon the question as to whether a set-off may be allowed in such cases as the case at bar. In the case of Columbus Building & Loan Co. v. Burke, 29 N. P. (N. S.), page 499, the court holds as follows:
“1. The relationship between a building association and the holder of a certificate of deposit in.such association is a contractual one, the certificate holder being a creditor with right to repayment, under the provisions of Section 9652, General Code, only upon such terms and conditions as the association provides.
“2. Where a building association’s constitution and bylaws provide that the company may require notice of withdrawals and thereafter may be required to pay withdrawals in the order of their presentation out of a fund constituting one half of the receipts of the association over and above certain expenses, and under such regulation the association has ‘gone on notice’, the holder of a certificate of deposit does not have a matured claim for the amount of the deposit until he has given notice and the fund to be used to pay his claim, in its proper order of priority, is in existence.
“3. Where such claim has not matured it is not actionable and therefore may not be pleaded as a legal set-off in a suit by the association against the certificate holder on a mortgage note.
“4. The defendant under such circumstances cannot claim an equitable set-off where he does not allege that the borrowing of the money for which the mortgage was given was founded upon or made in reliance upon a deposit simultaneously made or existing in the association, or that the association is insolvent.”
However, it was held in the case of Charles Leimonas v. Lithuanian Savings & Loan Association, 38 O. L. R,, page 153, as follows:
“1. A debt in the form of a savings account owing from a building and loan association to a depositor may be -set *415 off by the latter against a debt due the association from him and evidenced by his note and mortgage.
“2. Such a set-off is not a withdrawal of funds and consequently does not constitute a preference over other creditors and depositors of the corporation, nor is it a violation of its by-laws which limit the time and amount to be withdrawn.
“3. The theory of set-off is where two persons occupy the mutual relation of debtor and creditor or, in other words, where each owes the other at the same time, one debt extinguishes the other and there is no debt except such as is represented by the balance due after a comparison of the two accounts.”
It will be noted that the former case is a decision of the Common Pleas Court and that the latter case is a decision of the Court of Appeals. An examination of Section 9652 of the General Code of Ohio governs the withdrawals from building and loan associations. In the case at bar-there was no demand of withdrawal but merely a demand to balance mutual debts and the cancellation of the instruments representing the claims of the plaintiff and the said defendant. After a careful reading of this section of the statute, both the foregoing cases, and a consideration of the facts and equities involved in the case at bar, the court is of the opinion that the decision of the Court of Appeals as set forth in 38 O. L. R., 153, is correct.
It is true that the relationship of the building association and the holder of a certificate of deposit in such association is a contractual one, and if he seeks repayment he is bound by the terms and conditions of the contract, but the relation between a mortgagor and a mortgagee is also a contractual one. When the two relationships exist they occupy a mutual relationship of debtor and creditor. In the first syllabus of 29 N. P. (N. S.), 499, the court there says that the certificate holder is a creditor with a right of repayment under certain conditions.
It seems to the court that the argument to allow a set-off of this kind as contended by some courts creates a preference, is not sound. It is a well settled rule of law in Ohio that if a depositor in a bank which becomes in *416 solvent and goes into liquidation, owes the bank at that time upon a note his deposit is a legal set-off. Likewise, it is a rule that if a holder of a certificate in a building and loan association holds it at the time the loan association becomes insolvent and goes into liquidation, and he owes the loan association at that time upon a note held by it, it is a legal set-off. In the case at bar, suppose the plaintiff should go into liquidation tomorrow, could any one contend that the defendants’ claims would not be a complete set-off against the note held by the plaintiff? Certainly not. The plaintiff has brought an action to foreclose its mortgage against the defendants.
It was held in the case of Andrews v. State ex rel, 124 O. S., 348, that:
“A set-off, whether legal or equitable, must relate to cross demands in the same right, and when there is mutuality of obligation.”
Section 11319, General Code, defines a set-off as follows:
“A set-off is a cause of action existing in favor of a defendant against a plaintiff between whom a several judgment might be had in the action, and arising on contract or ascertained by the decision of a court. It can be pleaded only in an action founded on contract.”
It will be noted that both of the claims of the parties in this case arise on contract.
Equitable set-offs are allowed by our code. The code does not define mutuality of claims but leaves it to the rules recognized by courts. Wagnes v. Stocking, 22 O. S., 297.
The right of set-off may arise not from statute, but from the equitable rule of mutual credits. Felton v. Bank, 6 Ohio N. P., 136.
A stockholder in a savings and loan association organized under the laws of this state is entitled, when the association becomes insolvent, to set off, as against its assignee for the benefit of creditors, a claim for money which he has on deposit with the association, against his *417 liability for the unpaid part of his stock subscription. Miles v. Olszak, 87 O. S., 229.
An examination of the above case discloses that the doctrine for:
“Denying the right of set-off after a corporation has become insolvent, is the theoretical reason which often operates to deny the right of set-off in courts of law, which is, that there can be no set-off unless the debts are mutual and in the same right.”
A set-off has been allowed in various classes of cases in Ohio and sometimes when the claim was not due or unliquidated, as disclosed by the following authorities:
Bank v. Hemingray, 34 O. S., 381; Fuller v. Schleiglitz, Assignee, 27 O. S., 355; Kyle v. Thompson, 11 O. S., 616, 622, syllabus 2; Gildersleeve et al v. Burrows, et al, 24 O. S., 204; Hade v. McVay, Allison Co., 31 O. S., 231, 238; Needham v. Pratt, 40 O. S., 186 Register Co. v. Register Co., 8 N. P. (N. S.), 415.
The defendant raises the question of insolvency in this case and offers some evidence to prove it. Such evidence shows that in the period of three years that the plaintiff voluntarily paid obligations by recognizing its own certificates of deposits and otherwise and thus reducing its assets over a million dollars during such period, or to the amount of one fourth of its assets. While this might be some evidence of voluntary liquidation, yet it is not such liquidation as would justify the court in finding the company insolvent, even when considered with the further fact that the association is operating under a restricted basis. It is sufficient to warrant the consideration of a court of equity in granting relief. The court deems it unnecessary to express its opinion any further upon these facts.
The following statement is made in Volume 24, Ruling Case Law, page 803, paragraph 12:
“Although the doctrine of set-off was not recognized at common law, it was so absolutely necessary to the administration of justice that a court of equity could not fail to supply it when the common law admitted it, and long prior to the statute of set-offs it had been a familiar and favorite *418 principle of courts of chancery to adjust in one suit all conflicting demands between the parties, which were readily capable of such adjustment, where, from the relations and situation of the parties and from the nature of their mutual claims, equity and justice seemed to require a complete and speedy settlement. Consequently the jurisdiction of equity is not based upon any statutes of set-off, and would exist as well without any such statutes as it now does, and would not be in any sense affected by the repeal of those statutes. But while courts of equity exercise an original jurisdiction over questions of set-off, in the main they follow the same general rules as a court o'f law, in respect thereto, except where there is some equitable ground, growing out of the transaction or the relation of the parties, which brings the case within the general jurisdiction of a court of equity, and justifies granting the relief beyond the rule of law. By the exercise of this equitable jurisdiction the court are enabled to do justice between the parties in cases not strictly within the provisions of the statute. In many jurisdictions the granting of equitable set-off is not limited to courts of equity but courts of common law have an equitable jurisdiction in cases of set-off independent of the statute, practically coextensive with that of courts of equity.
“13. Basis of Equitable Set-off Generally. — Courts of equity interfere, in cases of set-off, on grounds analogous to those upon which their whole preventive jurisdiction is based, that is, to prevent irremediable injustice; and the criterion by which the allowance of set-off is to be determined is whether it is equitable. The general rule is that the remedy of equitablé set-off may be enforced independently of the statutes governing set-off, where from the nature of the claim, or from the situation of the parties, it is impossible to obtain justice by plea or cross action; in other words, in these cases where, through no fault of the defendant, he has no adequate remedy at law. But there will be a grant of the remedy only for the purpose of securing an equitable result, and not where its allowance would work an injustice to others having equal equities.”
It is contended by some courts in passing upon this class of cases that parties might buy certificates for less than their face value and thus secure a preference over other creditors or certificate holders of the loan association. This *419 court can see no sound reason for such argument. This reasoning can only be applied, it seems to the court, when, a company becomes insolvent or in cases of fraud where some fraudulent method is used to gain undue advantage. Business must be transacted upon a business basis, free from such restrictions. Negotiable paper should not be hampered with any such restrictions. An individual should have the right to sell his securities as freely as an individual may sell his property. These certificates could be sold and assigned at any time, the only restriction being that they were subject to the rules of the company and to the conditions printed on the back thereof. The holder of such certificate, in due course, is vested with all the rights of the original payee.
Equity frequently enjoins and stays action until set-offs may be determined.
Evans v. Beddinger, 24 C. C. (N. S.) 553; Bonding Co. v. Fish, 18 Circuit (N. S.) 534; Bank v. Brewing Co., 50 O. S., 151, 158, 159; Hade v. McVay, Allison Co., 31 O. S., 231, 238; Armstrong v. Warner, 49 O. S., 376; Barbour v. The Bank, 50 O. S., 101; Felton v. Olmstead, 6 O. N. P., 136.
In the case at bar has the defendant an adequate remedy at law? Are the claims merely cross-demands and insufficient to warrant interference by a court of equity? Has the defendant shown any peculiar equity which entitles him to be protected against plaintiff’s demand? It is admitted that plaintiff has' voluntarily reduced the rate of interest upon certificates of deposit. Plaintiff is seeking affirmative relief in a court of equity and demanding that the payment of its claim be accelerated and declared to be all due and payable on account of alleged failure of payment by the defendant, notwithstanding plaintiff admits that it has been tendered certificates of deposit with interest held by defendant and in excess of the amount of its claim and before any default was made by the defendant. Likewise the' defendant invokes the jurisdiction of the court seeking affirmative relief. Can the court under the facts in this case grant the relief?
*420 In 'the case of Berry, et al, v. Building and Loan Company, 32 N. P. (N. S.) 233, [O. L. B. & R. 7-9-34] the court holds as follows:
“1. The relationship between a building and loan company (association) and its depositors (not stockholders, or members of the association) is the same as that which exists between a bank and its depositors, namely: that of debtor and creditor.
“2. Where one opens . an account as depositor in a building and loan association, the statutes then in effect and the regulations and by-laws of the association not in conflict with the statutes, become part of the contract, and the board of directors of the association may not arbitrarily amend or change its by-laws or regulations so as to deprive a depositor of vested rights, nor may its officers ignore or refuse to recognize the depositors rights.
“10. When the association arbitrarily reduces its contract rate of interest, or reduces same without the knowledge or consent of the depositor, there exists right of rescission in the depositor, and he may so elect and sue and recover judgment as for money had and received.”
There is no dispute in this case as to the amounts of the claims of the parties so that if the defendant is entitled to the set-off and was entitled to the set-off at the time the demand was made, the court has full jurisdiction to give full relief to both of the parties. The court is not impressed with the contention that the defendant should not be allowed his set-off because he may have purchased his certificates for less than their face value as already indicated; neither is the court impressed with the claim that a preference would be given over other creditors or certificate holders of the loan association. ■ Section 22 of the by-laws of the company provides that:
“All withdrawals shall be taken from the oldest deposits and no withdrawals from any one account or certificates shall exceed,” etc.
Also,
“The required notices to withdraw shall be filed in the order in which they are received and paid from the regular receipts of the company in the order in which they are *421 filed as fast as 50 per cent of the regular receipts of the company will pay them.”
It is perfectly apparent that the foregoing provision of the by-laws of the company itself creates a preference so that if the company should continue allowing withdrawals in accordance with its by-laws it would create a preference in favor of those who first presented their certificates for withdrawal. If preference can be created by the company by contract is there any reason why it cannot be created by set-off when the relation of debtor and creditor exists between the loan company and the owner of a certificate of deposit and when such debts are mutual and in the same right? And more especially in view of the established law of Ohio that a holder of such certificate of deposits in a building and loan association held at the time the loan association, becomes insolvent and goes into liquidation is a legal set-off.
It seems clear from the established law of Ohio that a court of equity would have a right under the facts as disclosed in the case at bar to enjoin or prevent the transfer or encumbrance of plaintiff’s claim until the claim of the defendant matures, if it has not already matured as contended by the plaintiff, but is the power and authority of a court of equity limited to such remedy? May it not go farther and give full and complete relief when it may be done without injury to either of the parties or any one who might be interested? How can the plaintiff be materially injured by the allowance of the defendant’s set-off? How can any one else, including creditors and stockholders, be injured by the granting of such relief, especially in view of the established law of Ohio in cases of insolvency or of liquidation?
It is claimed by plaintiff that the contract known as Exhibit X, affects defendant’s right of recovery. How can it have any bearing upon the claims existing between plaintiff and defendant? There is no evidence disputing the fact that defendant is the holder and owner for value of the certificates in question. He is the owner in his own *422 right. He is also the owner of the property and may sell it or give it away if he desires to do so. There is insufficient evidence to establish collusion or fraud. It is common knowledge that real property values have so depreciated that equities have vanished and scarcely any property is worth more or even as much as the first mortgage. This contract is'some proof of value as estimated by the parties just as the purchase and sale of certificates at less than their face value is some proof of the financial condition of the loan association.
While there is no evidence in the record as to the present general economic conditions and financial distress of governmental subdivisions and individuals, yet courts to some extent take judicial notice and cannot help being more or less influenced in finding just and equitable means of considering and adjusting the rights and equities of parties; in fact, it is absolutely necessary to do so in order to administer justice. The very nature of the claims of the parties in this case, in equity and justice, seems to require that the court make some finding which will be just and equitable in the light of existing economic conditions and use all of its authority and power in working out such equitable and just adjustment. Every one who gives any consideration to these questions is confronted with the knowledge that our whole financial structurle has been undergoing radical and most substantial changes. A comparison of bank statements covering a period of the few years last past discloses that the banks were in a process of voluntary liquidation, as well as many building and loan associations. Legislatures, executives and courts have been called upon to use drastic measures and change many thought to be established laws and rules of procedure in order to work out a more equitable and just determination of governmental and individual rights. This court admits that it may be somewhat affected, by reason of such changes and conditions, just as all courts have been affected in the past, and, when the common law or the statutory law have failed to supply or furnish means and *423 remedies for the due administration of justice, courts of equity have intervened to supply them.
This court is of the opinion that under the facts in the case at bar it has the power and authority to grant full relief to all of the parties in this case; that the equities of the case entitle the defendant, Swinehart, to the relief sought, and entry may be drawn in accordance with the court’s findings directing and ordering the plaintiff to cancel and surrender its note and mortgage to the defendant and directing and ordering the defendant to cancel and surrender his certificates of deposit to the plaintiff and taxing the costs one-half to each of the parties and upon failure of parties to comply with such order that such note and mortgage and certificates of indebtedness be cancelled and the parties released from the obligations thereof and enjoined from transferring or encumbering the same.